The next case this morning is 522-0441, People v. Charles Shaw. Arguing for the defendant appellant is Sharifa Rahmani. Arguing for the state appellee is David Friedland. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Morning, counsel. Morning. We've read your briefs. We're looking forward to your arguments. Ms. Rahmani, are you ready to proceed? Yes. Good morning, your honors, counsel. My name is Sharifa Rahmani from the Office of the State Appellate Defender, and I represent the appellant, Charles Bernard Shaw. On appeal, we raised two issues. First, whether the state failed to disprove beyond a reasonable doubt that Charles was justified in shooting Mr. Vance. And second, whether the trial court improperly relied on a pending gun charge in aggravation when imposing Charles' 12-year sentence. I'll be focusing mainly on the first issue and will briefly address the second issue. So Charles was initially charged with first-degree murder, but the jury found him guilty of second-degree murder. So the jury found him credible that the circumstances existed which caused him to believe that he was justified in shooting Terrell Vance. But the jury found that this belief was unreasonable. With regard to its assessment of reasonableness, the jury was wrong. Rather, Charles' belief that he had to shoot Vance to protect himself and Pierre, his younger brother, from being killed or injured was reasonable, based on the events that were quickly unfolding that night. After Vance almost hit Pierre's car, he did a U-turn and followed Charles and Pierre into the Modemart gas station parking lot in a fit of road rage and slowly to confront the brothers. Vance repeatedly threatened to kill Charles and Pierre. He pointed a black object at them, which Charles believed to be a gun, and a portable radio that could easily be mistaken for the barrel or handle of a gun was found in Vance's car and was easily accessible from the driver's seat. Vance repeatedly repositioned his car throughout the encounter in a hostile and aggressive manner, essentially tracking the brothers' movements. Then immediately prior to getting out of his car and getting shot, Vance told Charles and Pierre that he was going to kill them when he got out of his car. Under these circumstances, Charles' belief in the need to defend himself and his brother was reasonable. Here, it is clear that Charles was not the initial aggressor. There's the Vance almost hits Pierre, and then he follows them into the gas station. And he's basically, you know, he follows them in there, he's telling them, I'm going to kill you, and he's pointing a black object at them. And that black object looks like a gun, as is evident from the pictures in the briefs. And the state makes much of the fact that there was no gun found. However, a gun is not required to show that someone was threatened with unlawful force. It looks like a gun, it was pointed at Charles and Pierre as if it was a gun, and Charles thought that it was a gun. And so the brothers were threatened with unlawful force. And the danger was imminent. At each turn, Vance became increasingly hostile and sought to escalate the encounter. So right when Vance pulls into the Monomark gas station, he pulls at a diagonal in front of Pierre's car, and at that point, he's saying something to them, and he says that, and Charles tries to get his brother's attention and says, Hey, Pierre, like he's talking to you. And Vance says, no, I'm talking to both of you. I'm going to kill both of you. And he's pointing a black object at them at this point. So his car is already positioned in front of Pierre's, where Pierre can't even move at this point. He can't move his car at this point. So when Vance says this to them, Charles, reasonably apprehensive, goes to his car and arms himself. So when Charles walks away, Vance then moves his car in front of, or positions his car where his front door is basically in line with Pierre's door, and Pierre is still sitting behind his car. Pierre doesn't move. Again, still pointing the black object, threatening to kill them. When Charles returns, Charles tells Pierre, come on, let's go. Let's pay for gas. And then Vance again speeds up, stops his car real quick, doesn't stop at this pump, and again tells them, I'm going to kill you. But this time it wasn't just I'm going to kill you, it's I'm going to kill you when I get out of this car. So not just I'm going to kill you, I'm going to kill you at this time. I've not been able to see the video yet because of technical difficulties. I've not had access to the video, but what is the evidence that the victim was pointing something black at the defendant? Is it just the testimony or is that visible on the video? So you can't really see it on the video. There's several angles of the video. It's a little bit difficult to see. So because you don't actually see, you can't actually see the black object on the video, but Charles testified to there being that black object pointed at them. And again, that radio that, I mean, the radio looks very much like the barrel or handle of a gun. And that was found in the passenger side, like on the back, in the back mesh pocket. And the officer testified that that would have been easily accessible. And the driver could actually reach that like from where he was. So the third time he says that I'm going to kill you and I'm going to kill you when I get out of his car. So the brothers still don't do anything. Charles again is doing nothing with his gun at this point. When the victim was found though, the radio was not in his hand. It was still in the pocket behind the seat. Correct. It was in the pocket behind his seat, but here we've got three different times. You've got this black object being pointed at you. So at the time that Charles is there in the gas station, so they're in the vestibule of the gas station. And when Vance, like when he says, I'm going to kill you when I get out of this car, he pulls up his car quickly stops, turns off his car, gets out of the car. And as he's getting out of the car, Charles runs back and starts shooting. And I mean, in this circumstance, when you have somebody who's already pointed a black object that, I mean, this whole encounter was like approximately two minutes. Like this was a very short period of time that this, it looks like a gun and you're being told it's being pointed at you as if it's a gun it's being, you're being told that you're going to be killed with it. You're going to be killed. So at that point, If I remember right, the defendant did not have a gun on him at the time. He went back to his van or his vehicle to get the gun and then came back. Is that right? Correct. He did. That was after though, he had, Vance had already pulled in and had his car positioned in front of Pierre's. And it was also after he had already been threatened to be killed once and had that black object pointed at him at that time. So, and, so then when Charles runs out and to, at that point in time, the danger was imminent because Charles reasonably, Charles reasonably, excuse me, reasonably believed that force was necessary to defend himself and Pierre, because I mean, again, Charles never engaged with them until he had to. And by the time that Vance got out, when you look at the surveillance videos, like from one angle, it doesn't look like, you know, it's like, oh, they could have gone anywhere. They could have done something even though they didn't have to have no, any duty to retreat. But when you look at the vestibule, it's tiny. And it's like, if somebody is coming around to shoot you, then they would have essentially been sitting ducks. And this is after already being threatened three times that I'm going to kill you. After having that black object, that looks like a gun pointed at them three times saying, you know, at the time that he's being threatened and having their movements tracked the entire time by Vance while he's in his car. And so Charles did not have to sit there and wait for him or his brother to be shot or to be killed. Anybody in Charles's position would have believed and reasonably so based on Vance's actions, repeated threats and the pointing of the gun, that when he stopped his car and he got out of it, he was coming to make good on his threats and that he was going to kill them. The law does not charge an individual when he has reasonable grounds to believe himself in apparent danger to use infallible judgment. Again, based on these circumstances that Charles was presented with, his actions were justified and his belief in the need to defend himself and his younger brother was reasonable. The state failed to disprove this. And according Louis asked this court to reverse his conviction for second degree murder. Now turning to the second issue at the time of sentencing, Charles had a pending gun charge. At sentencing, the state presented absolutely no evidence relating to this charge and the judge improperly relied on it when imposing Charles's sentence. While the state minimizes the extent of the court's comments at sentencing by saying that the court was just considering this for the fact that Charles was on bond at the time of the incident offense, it's clear from the judge's remarks that not only did he consider the pending gun charge, but explicitly relied on it in aggravation. And in doing so, he presumed Charles's guilt of the pending charge, which affected Charles's sentence. The judge found that Charles was quote, still carrying a gun after being charged, which presumes he was guilty of carrying the gun in the pending case. The judge noted that maybe it's not the same gun, but the fact he was going to assume that it was a different gun. So now we've got the judge also considering that he's not had only one gun, but now he's got two guns. And then the judge also found an aggravation that this was an escalation from carrying a gun. That basically what happened in this case, the shooting in this case was an escalation from carrying a gun in the pending case. And the state presented absolutely no evidence related to this charge. And these remarks, as these remarks make clear, the judge did more than merely consider that Charles was on bond. The judge's consideration of the pending gun charge, presumption of Charles's guilt of that offense where the state presented absolutely no evidence and explicit reliance on the gun charge in aggravation was plain and reversible error. So as to issue two, we ask this court to reverse and remand for a new sentencing hearing. Thank you. Thank you. Justice Moore. No questions. Justice Barberos. Nothing. Mr. Brown, do you have rebuttal time in a moment? Mr. Freeland, you ready to proceed? Thank you. May I proceed? Thank you, Jim. Good morning. My name is David Freeland. I represent the people of the state of Illinois. Good morning, counsel. May it please the court. Defendant's sufficiency argument. I mean, this is an unusual case where the entire incident was captured on video. It's a shame your honors weren't able to view the video, but I'm not going to try to sit here and narrate it. But the video again is we were talking about a three minute long interaction and really in defendant's own testimony. So the defendant was able to give his a complete unrebutted as counsel points out. No one was there to contradict him. His complete version of what he believed, what he thought, how he acted, explained every single one of his actions. And the entire incident was captured on a video camera from multiple, multiple angles. And the jury rejected that his belief in these circumstances was rejected. Now, of course, in the, under the standard here, that no, the, in a sufficiency of the evidence standard, we have to keep in mind that it's viewing the light and the evidence most favorable to the prosecution. Defendant's argument to this court is really just the exact same argument that the defendant made to the jury, that he was feared for his life, that he feared for his brother's life, that he feared based on Mr. and based on the victim's actions and the jury rejected it. And I think that we're not asking your honors to be a rubber stamp for the verdict, but to credit the jury's careful review, the jury had the opportunity to gauge the credibility of the defendant, view the video for themselves and came up and properly convicted the defendant of murder. I want to address a few things that support this, the support the defendant's finding. I mean, you can view the video for yourselves, but I want to point to a few things that suggest that defendant's version of these events is actually incredible. Number one, he says and counsel's arguing that this is all based on a road rage incident and something happened. Remember that the police department is right near this moto Mart, right near the Everett, the area of the supposed road rage incident and defendant is claiming that he did nothing wrong. He has done absolute zero wrong this entire night and everything is the fault of the victim. The victim was the one who incident committed a traffic infraction. The victim then follows the defendant to the gas station. I mean, that doesn't make sense. The person offending the, the, the, the offending person usually doesn't follow the other person, but regardless, they're both there. They're all at the moto mark. Then the, the victim is threatening the victim. And as counsel conceded, you cannot see a black object ever pointed out the window. And under this version of events, you'd have to find that the defendant pointed a black object at the victim. And then I'm sorry, at the defendant, the victim points the black object at the, at the defendant and then puts it away in a mesh pocket behind the pad, the front passenger seat, right before he's going to go confront him. I would note, and I point your honors to pages 391 and 92 of the record here. The defendant testified that when they were walking after the defendant goes and gets his gun from the van, I'm going to, he says that the victim says I'm going to kill both of you while pointing a black thing at them. Defendant testified that they didn't pay him no mind and continue trying to get gas and leave. And this was born out on the video that supposedly right when this victim extends his arm and points out a black object that he believes is a gun, the defendant doesn't pay him. No mind. Isn't alarmed. Just calmly. And you'll see on the video, calmly walks into the vestibule of the, of the modal mark. That's not credible either. Someone points a gun at you. If any time that he was justified and she's already got the gun, if there's any time to shoot the victim, it's then, but he doesn't, he goes inside the victim's car, moves up a little bit. And then you'll see on the video that the defendant runs out and shoots him before he's even fully out of the car. And there can be no question that the victim had was unarmed. There was no question that the, the radio was found in the back mesh pocket that he didn't have it on him. And it wasn't found anywhere near him. And the jury viewed all this and came up with the problem. Let me ask you though, does the defendant's belief have to be accurate? If, if what we take, you know, what are your testimony that he's, that he's been threatened and that the threat specific threat that triggered him to feel that he was imminently in danger of being shot or killed or beat up or, or knifed or whatever was that when I get out of this car, I'm going to kill both of you. And then the man starts to get out of the car. I'm just asking, does his belief have to be accurate that he's about to be killed based under those circumstances of having heard the threat? And we can't. Sure. Two, two things. One, the judgments don't have to be infallible, infallible, but the jury is the one that decides whether or not they, his, his belief is actually is, is that objectively reasonable? It's sure. Infallible judgment. It doesn't have to be perfect, but here the jury said, well, what he did. And in these actions, when this person was getting out of the car and he was not out of the car, the victim would have had to walk all the way around his car, enter the vestibule. And the defendant basically sprints outside and fires four bullets. And the, the medical examiner indicated that the bullets are in a downward trajectory, which you'll see. He follows into the car. The jury is the one that decides that they reviewed it. They heard him. He said, well, I made a mistake and he can say, I made a mistake. I thought he was armed. It turns out he wasn't armed. And there were options for this defendant to do. He certainly would, would he have been trapped in the vestibule? No. Is there a clerk inside the vestibule? Does the defendant walk into the gas station and say, Hey, you know what? This guy, this guy right out here in a Moto Mart where apparently bad things happen and people are killed, which is the defendant's testimony. This guy just threatened me. He just pulled in. He just pointed something that I think is a gun at me. Call the police. No, he doesn't do that. He then watches the victim and he runs out and shoots him as soon as the victim gets out. Now that's, what's reviewed was in the jury said, yes, he subjectively believed that he needed to defend himself, but that was unreasonable because it was, uh, the defendant here escalated this situation. He shot an unarmed man in the gas station. Was there a verbal exchange going on? I think the judge, I mean, that was the ultimate, uh, uh, result is that he, he acted on his unreasonable or, uh, stake in belief. But from my view of the video and from my review of the testimony, they didn't do anything to escalate the situation. Uh, and I believe it was his brother, Pierre, who said, uh, here he come. Um, when, uh, when Vance started to get out of the vehicle, it wasn't that the, uh, that, uh, that Charles was watching, you know, waiting for his opportunity to use his weapon. Uh, he was in there and his brother said, here he come. And, and Charles reacted based on if we believe it, uh, if the jury believed it, which apparently they didn't, that, uh, he had been told when I get out of this car, I'm going to kill you. Uh, you know, I, I hate to use the term, but maybe, you know, his feeling was if I don't get the drop on this guy, one of us is going to get hurt. Well, that's what they reviewed. And, you know, the statement again, going back to, is this defendant aware that comes from the defendants? And I pointed out in my brief, his self-serving testimony. Think about that statement. Hey, when I'm going to get, when I get out of this car, it's incredibly self-serving because he had, he knows that he has to justify the killing as the defendant exits the car. So he, so this exact, and who would say, I mean, the jury, I mean, the jury's entitled to find this. When I get out of the car, I'm going to kill you. That's, I'm going to give you a very specific time that I'm going to kill you. And so the defendant's version of this is that the, the victim says specifically when I get out of the car. And so when I saw him get out of the car, I knew I was going to be killed. The defense, the jury's entitled to believe or disbelieve that testimony. It's incredibly self-serving and it seems unusual. If the victim really wanted to kill the defendant and he had a gun, he's pointing a gun at him, supposedly inside the, the, uh, while he's inside his own vehicle, while he's in the lot, the jury reviews all this and says, Hey, these circumstances, something's not matching up here. I don't believe this. What the defendant did is not reasonable. And here, yes, we're having, we have to view everything and all of the inferences in favor of the state. And here when the, the he's, we don't even have to view the, we could view the inference that that wasn't even said because there's no proof other than the defendant's words. The defendant says, I, we weren't interacting. We weren't, uh, we were just paying him. No mind. I wasn't trying to interact with him. Well, there's clearly an argument going on because that's what this walk test. It actually kind of goes to the statement that I took issue with when you, you suggest that he accelerated the situation. Uh, you know, he, he apparently didn't, you know, he wasn't carrying a weapon on him at the time this all started. He, he testifies that the only reason he even went and retrieved his weapon was he feared for him and his brother's safety. There's an argument that was made that, you know, he turned his back on the defendant or on the deceased and had an opportunity to leave or, or remove himself from the situation when he went into his van. Uh, but his testimony was, he wasn't fearing solely for his own safety, but for his brother who was still left in front of the, uh, of the assailant, if you will, of the, of the deceit. Um, so he was protecting himself and his brother. Uh, as you point out, he had ample opportunity to use his weapon prior to when he did, if he had an intent to murder this guy or, or whatever. Uh, it seems to me like there was probably, um, uh, you know, a good likelihood that whatever triggered him to jump, to run out of the vestibule and shoot, uh, Vance was something that he truly believed was his last opportunity to, to, to, you know, protect himself and his brother. So I, I, I understand the jury may not have agreed with me on that, but, uh, but there's no testimony. There's no evidence to suggest that he, he was mistaken in his belief. So that's what I'm struggling with in this case is what the jury perception was in terms of why they, you know, why they didn't believe they believed everything else that he said pretty much, except for when he decided to shoot. And I know in your brief, you kind of, uh, uh, you know, you characterize it as, well, he shot him while he was sitting in his, you know, in the car. Um, even the, uh, I think her name is Walker. Uh, even the, the clerk testified that he didn't shoot any, there were no gunshots until this man was getting out of his car. And, you know, yeah, I guess if you're thinking ahead and trying to come up with a good reason for why you did something, when you did it, maybe you come up. Well, he said, when I get out of the car, but I don't find it so, uh, uh, difficult to believe that, you know, Vance said something along those lines. And so I'm struggling with why the, uh, why the jury believed everything up to that point. I think probably a good part of that. Was Charles's actions after the shooting. Absolutely. And I'm, that's what the jury, yes, the, this defendant where blocks from the police. Uh, if I have to just very briefly respond, we're blocks from the police department. He doesn't go to the police department. He tells no one to call the police. He has a cell phone. There's no doubt that he had the opportunity. He doesn't tell. He did testify that his cell phone was dead. Sure. But again, they can disbelieve that. I mean, there, well, he's right in the game, in the, in the, the historic vestibule quick call nine one, one, they're right down the street. He shoots somebody. I needed to kill that guy to the clerk, call nine one, one, call the police stick around. Yes. His actions afterward are certainly indicative of consciousness of guilt. And maybe he was mad at, I mean, the jury could find that the defendant started everything and that the defendant was mad at Vance. And the, and when I say the defendant escalated it, there's no question that Vance is dead because the defendant went and got a gun people. If we shoot everybody that we have a verbal argument in, uh, that's what the judge was, took issue with at sentencing. And the jury here viewed all of that. Everything that hurt the tenants, unrebutted and uncounted story and his explanation for doing so, and found him guilty of second degree murder. But isn't the, is it, if you remove all the evidence concerning the, uh, actions of the defendant after the shooting, um, what, what does the, there's no, I can't see a reason why the, the jury would have believed everything up to that point, except for why he shot him or when he shot him until they learned that, you know, if he would have sat down and waited for the police and, you know, gave a statement, um, I don't think that this jury would have found him guilty of anything, but that's me speculating on that. But I'm just saying that it seems to me like the, the jury hung its hat on his guilt based on his actions after the shooting, because they believed everything up to that point. And he, as I said, he had ample opportunity to defend himself or assault the, uh, Mr. Vance with his weapon, um, prior to when he did. Well, I think that the jury certainly doesn't necessarily have to have believed his entire story up into that, but with the jury definitely could have found that defendants actions and running around and then shooting him right in the absence of the, of the victim, even holding something up. I mean, there was nothing in his hand. He had to go around the car at a sprint to get to the victim. First, you know, you don't, sure. He doesn't have to wait until he's, uh, first blood, but here there was nothing in his hand. Nothing had happened that we don't even have to have. The jury believed that he pointed the black object at the defendant, uh, from that part. The jury doesn't have to credit everything up until that point. He has to say, well, there, the defendant's belief was objectively reasonable. If the defendant didn't run away from the victim, the first time when he had a gun and pointed it at him and said, I didn't pay him no mind and continued walking in there and didn't tell the clerk that, uh, Oh, I saw a gun. The jury could have found that he didn't even have a gun or didn't even point the black thing at him. There's no reason that the jury had to find every, believe every single thing that the defendant said. They could have said, well, the defendant had an option opportunity to tell the clerk to call 911 or the defendant could have left. His actions here were unreasonable. He shot an unarmed man in the parking lot, simply over a verbal dispute. And that's what I mean by escalation. This didn't happen unless the defendant, uh, went and got his gun and, uh, ran around and ran out the door and shot him, even though he was getting out. He's entitled to get out of the car and go into the gas station. Well, that's a mischaracterization of why he was getting out of the car based on everything. Uh, and, and as far as, uh, as far as what the, uh, what the defendants, um, you know, but I'll, I'll leave it at that. I'll leave it. Sure. Well, I would just ask you to affirm their conviction, the jury's verdict in the light, most favorable to the prosecution and no rational jury. And this jury did. So we'd ask you to affirm their conviction. I'll rest on my arguments in the brief on the bond issue. Thank you. Your honors. Thank you, Mr. Freeland just as morning. Other questions. Uh, well, in addition to fleeing the scene, he also didn't tell the truth to the police. Did he? No, he lied, uh, to the police. He, uh, uh, admitted lying to the police. He hid the gun. Uh, he had ample opportunity to contact nine one one, or give his, uh, give a truthful version. And then when he, he didn't give a truthful version to cast doubt on his whole credibility as to the version of events that, that occurred that night. And that would also support, uh, the jury's conclusion. Wouldn't it? Yes. I agree that when his credibility and, and, and beliefs are at issue, uh, admitting lying to the police for over an hour and a half, which is what it was, he acknowledged on testifying that, uh, during his testimony, uh, can support the jury's conclusion that he wasn't telling you the full story or that he may have believed something else. Okay. Thank you. All right. Thank you, Mr. Freeman. Thank you. Uh, so there's a few things I would like to address on rebuttal. Um, the state says that they're not asking this court to just be a    Um, the state says that they're not asking this court to just be a rubber stamp on the jury's verdict and the rubber stamp, the jury's findings, but that is exactly what it is. Um, and that's exactly what they are asking. When you take a careful review and look at the evidence in this case, Charles's belief that he needed to protect himself and his brother was reasonable. His, you know, the state keeps saying that, Oh, well, his testimony was self-serving. Well, the state presented no evidence, rebutting Charles's testimony. Charles was not impeached regarding the events that occurred. In fact, um, as justice Barbera said, that even, Um, when Christian Walker, the clerk even said that. Um, Charles did not start shooting until Vance was getting out of his car. And I know that, you know, there was been some discussion regarding his post arrest conduct. But Charles is post arrest conduct. Would be relevant of consciousness of guilt. Perhaps if this was first degree murder. But. The jury found him guilty of second degree murder. So the jury already believed that he. Had he felt the need that he had to act in defense of himself and his brother. So the post shooting conduct actually has nothing to do with the reasonableness of Charles's belief. At the time of the shooting. So we have to remember, like this is in the moment. This isn't like in hindsight. This is in the moment as things are quickly unfolding. This is a very quick. Incident and the circumstances were such that. Um, that were, I mean, that really are relevant to reasonableness. To his reasonableness of reasonableness of his belief at the time that he shot or the events leading up to the shooting. And exactly at that time. So that that's really what's relevant here. And again, ultimately. You know, you've got, you don't have a gun, but there doesn't have to be a gun. It resembled a gun. It looked like a gun Vance pointed it at them as if it was a gun. And what is the point of pointing something at somebody that looks like a gun and saying, I'm going to kill you. Besides to make that person think. That they are going to be killed. I mean, they're actively being threatened. And so I understand that, um, you know, the. The state says that, oh, well, Charles was. You know, um, you know, lying to the police for an hour and a half, but this isn't the type of situation where you've got somebody who made up this completely fabricated story, who did everything to avoid or evade arrest or anything like that. Actually, Charles admitted to being the shooter. Well, he didn't say, here's where the gun is. He said, I, I shot him. Like he admitted to that. So this isn't the situation where you have somebody who's saying like, no, I didn't do this and I didn't do anything, you know, and then actually when Charles's mother called him. To tell him that the police wanted to talk to him. He was on his way to go talk to the police. That's not the actions of somebody who thinks that they're guilty. Let me just go talk to the police. Like, no. So, I mean, the situation here and really what's most important is what is, what happened prior to and leading up to the incident. And you, again, you've got Charles, who's been threatened three different times, Charles and Pierre, both of them who have been threatened three different times. And I'm going to kill you. I'm going to kill you. I'm going to kill you now, basically. Each time having a black object pointed at them. And I know the state says, oh, well, you know, Charles went to his van and this and that Charles had no duty to retreat at all whatsoever. And so he was there like justice barbarous pointed out. He was there. Not, not only did he feel a need that he was that he was threatened, but that his brother was threatened. And he felt the need to not only protect himself, but to protect his brother. And as Charles even testified, his brother was unarmed. What is, what is Pierre going to do when you've got vans sitting there pointing black object, you threatening to kill you? I mean, even you can see the actions of Pierre hiding behind his car the first time or the second time that he's positioned his car, you know, he's hiding behind his door. Like clearly there was a threat. Let me, let me ask you this with regard to the threat of, I'm going to kill you. Assume for a moment that there was no black object pointed at the brothers. Do they still have a reasonable apprehension of being killed by this guy? If he's repeatedly driving his vehicle the way he did and threatening to kill them. So I think it could be arguable. I think though, when you add in the fact though of the black object that resembles a gun, it's a whole different, you know, verbal threats alone are not enough. You know, as I noted in the brief, but it wasn't just verbal threats here. I mean, you have the finish. Yes. Complete your answer, please. You have the verbal threats. You have the pointing of the black object. You have the hostile positioning of the car. You have the tracking the movements, you know, and every single step you have. I mean, it's like they're being, I don't know. It's almost like they, they had no other choice. Charles had no other choice at every single step. It's like, it's just getting like, it's coming, it's coming, it's coming. And then, you know what? He gets out of his car. It's there. He has no choice but to act at that point. So while verbal threats alone would not be enough, that's not what we have here. So let me ask justice Vaughn, if I may. With regard to the defendant's, or with regard to the state's argument that, hey, they're standing at the vestibule. There's this clerk behind the windows. They can ask her to call the police. If his state of mind, if his belief was that this guy gets out of the car, he's going to shoot me. Would calling the police at that, that juncture prevent that from happening? No, absolutely not. It wouldn't have at all. And I mean, actually, I mean, again, that vestibule is small. I mean, there's just a small area and you have the door that it's like Vance gets out of his car. If Vance was able to complete that action and come up, then, I mean, Charles and Pierre, I mean, who knows what would have happened to them? They had, I mean, in their mind, after being threatened, there was no way and you don't have to call the police. You don't have to do that. That's why we have the right to self-defense. Sorry, go ahead. You know, and the other thing is, is that like the, this situation had been going on and there had been yelling and there had been all this stuff. And, but the clerk also didn't call the police before that either. So we could speculate to be like, oh, well, in hindsight, maybe he should have asked, will you please call the police? These guys are about to kill me. But I mean, realistically,    I was in that car. I was in that car. I was in that situation. It was quickly unfolding. It was very, it was a short, very short timeframe. You're not thinking, I mean, that woman was behind bulletproof glass. My clients weren't, my client wasn't. So if somebody came, if Vance came at them, he had no choice, but to defend himself. And when Vance got out of the car, that is what he was doing, was coming to make good on his threats. And Charles's belief that that's what he was doing was reasonable. So again, we asked this court to please, or are there any other questions? Sorry. Justice Moore. No questions. Justice Barberos. Nothing. All right. Thank you. Thank you for your arguments. We will take the matter under advisement and issue a decision in due course. Thank you.